IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID HANSEN and CHRISTINE HANSEN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-04-4111 |
| AMY ODIN, | § § § | |
| Defendant. | § § | |

ORDER

Pending before the Court is Defendant Amy Odin's Motion for Summary Judgment (Instrument No. 49). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted.

BACKGROUND

Plaintiffs David and Christine Hansen (collectively, "the Hansens") assert claims of unlawful seizure, malicious prosecution and intentional infliction of emotional distress against Defendant Amy Odin ("Odin"), a case worker for the Texas Department of Family and Protective Services ("TDFPS"), in her individual capacity. This action arises from the TDFPS's removal of the Hansens' three-month-old daughter, Erika Hansen, from their Fort Bend County, Texas, home in 2003.

On September 16, 2003, the Hansens brought Erika to the emergency room of the Sugar Land Methodist Hospital, where she was treated for a fractured clavicle. Hospital personnel were apparently suspicious of the Hansens' explanation of Erika's injury–Erika had scooted to the edge of the bed on her own and fallen 18 inches to the floor–and reported the injury to the authorities. Two days later, Erika's case was referred to Odin, who at the time was assigned to investigate allegations of abuse and neglect for TDFPS.

Odin twice attempted to visit the Hansens' home and also researched the Hansens' background, which showed that both David and Christine Hansen have extensive criminal histories. Additionally, Odin learned Christine Hansen has a lengthy history with TDFPS regarding her other children. On September 22, 2003, the Hansens agreed to meet with Odin at their home, and Odin asked if they could obtain X-rays of Erika's injury. That day, the three adults met with Erika's physician, Dr. Aye Thida ("Thida"). Thida told Odin that the Hansens' explanation was inconsistent with her medical findings. Further, the physician observed that children typically cannot scoot the way the Hansens described until they are about seven months old, and a fall from only 18 inches is not likely to result in a fractured clavicle. The three adults subsequently took Erika to the Texas Children's Hospital for follow-up X-rays. Doctors there also found reason to suspect Erika had been physically abused.

Odin and her supervisors decided to pursue emergency removal after the Hansens allegedly refused TDFPS's offer to place Erika with a relative. On September 22, 2003, Erika was placed in a foster home. At a hearing the next day, TDFPS was awarded temporary managing conservatorship to Christine Hansen's brother and his wife. At some point thereafter, Erika Hansen returned home. On February 11, 2004, the abuse case against the Hansens was dismissed pursuant to an Agreed Order of Dismissal by the 328th Judicial District Court, Fort Bend County, Texas.

On February 6, 2006, Odin moved for summary judgment, asserting the defenses of qualified and official immunity.[1] The Hansens, who proceed *pro se*, ostensibly counter that a genuine issue of fact exists as to whether Odin acted reasonably in removing Erika from home.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view the evidence in a light most favorable to the non-

---

[1] In November 2005, the Court dismissed claims against TDFPS and Odin in her official capacity. Subsequently, in February 2006, the Court dismissed the Hansens' claims for abuse of process, interference with a familial relationship, outrageous conduct/false light and false report claims against Odin individually. Thus, the only claims remaining before the Court are for unlawful seizure, malicious prosecution and intentional infliction of emotional distress.

movant.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come "forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).  It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue.  *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

"A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).  The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint.  *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th

Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

## LAW AND ANALYSIS

A. Unlawful Seizure

Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983, ostensibly alleging they suffered a Fourth Amendment violation when Odin removed their daughter, Erika Hansen, from their home. *See* 42 U.S.C. § 1983 (2000). Specifically, they allege Odin lacked probable cause to remove her, Odin acted unreasonably and with personal animosity in pursuing the removal, and the seizure of Erika was unlawful.[2] Odin contends the claim should be dismissed because qualified immunity shields her from liability.

When sued for a constitutional violation under § 1983, state officials may assert the affirmative defense of qualified immunity. *See White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Under the law, a "defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution . . . ."

---

[2] The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend IV.

5

*Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).[3] To establish that the defense applies, government officials must demonstrate the conduct complained of occurred while they were acting in their official capacity and within the scope of their discretionary authority. *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004) (citing *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)). Social workers sued under § 1983 may assert a qualified immunity defense. *Roe ex. rel. Doe v. Tex. Dep't of Protective and Regulatory Servs.*, 299 F.3d 395, 400 (5th Cir. 2002). In the instant action, the Court finds that Odin may assert the qualified immunity defense because she acted in her capacity as a TDFPS case worker in investigating and effecting emergency removal proceedings in Erika Hansen's case.

Once a defendant properly asserts qualified immunity, the plaintiff bears the burden of showing the defense does not apply to his or her case. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To prevail against a qualified immunity defense, the Hansens must show: (1) their allegations state a violation of constitutional law; and (2) Odin's conduct was objectively unreasonable in light of the clearly established law. *See Glenn v. Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997). Stated differently, the

---

[3] Qualified immunity cloaks government officials, shielding them not only from liability but from suit altogether. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

qualified immunity doctrine protects government officials performing discretionary functions from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Odin challenges the Hansens' ability to demonstrate the second step of the qualified immunity analysis, which requires that they show that Odin's conduct was objectively unreasonable. Therefore, the Court must analyze whether a reasonable case worker would have taken the same actions under the same circumstances. *See Martin v. Tex. Dep't of Protective and Regulatory Servs.,* 405 F. Supp. 2d 775, 793 (S. D. Tex. 2005).

In support of her assertion, Odin argues a reasonable caseworker would have believed there was sufficient evidence that Erika would be in danger if she remained at home. Odin contends she based her actions on the fact that three physicians confirmed the fractured clavicle, and the Hansens' explanation of her injury was inconsistent with the doctors' findings. Additionally, Odin states that when she visited the Hansens' home, she learned that Erika–a three-month-old infant–was sleeping on an adult bed without a guardrail, rather than in a crib or bassinet.

As part of her investigation, Odin states she researched the Hansens' background, which showed that both Christine and David Hansen have extensive criminal histories, including David Hansen's sexual assault conviction involving his

7

four-year-old stepdaughter.[4]  Moreover, Christine Hansen has a long history with TDFPS involving her five other children, who have previously been placed with relatives. Odin states that after she told the Hansens that Erika would be placed with a relative, Christine Hansen threatened her life, resulting in hospital personnel calling security to protect Odin. Finally, she argues that because Erika was so young, and therefore unable to protect or defend herself against any abuse, Odin's supervisor directed her to pursue the emergency removal. Based on her investigation, Odin argues she acted objectively reasonably in her investigation.

In response, the Hansens argue their explanation was consistent with Erika's injury, that Odin lied in a court affidavit based on personal animosities she felt toward Christine Hansen, and the abuse case against them was dismissed after drug tests were negative and both she and David Hansen agreed to participate in parenting classes. They appear to re-urge their contention that Odin lacked probable cause to seize Erika from their home.

The Court determines both that the Hansens have not presented evidence to rebut Odin's affirmative defense and that Odin acted objectively reasonably as a matter of law in securing the emergency removal of Erika from her parents' home. In fact, the

---

[4] The victim was not one of Christine Hansen's children but was his stepdaughter from a previous marriage.

evidence before the Court does not support any of the Hansens' contentions. For example, while Odin presents a doctor's affidavit stating that their explanation was inconsistent with the injury, the Hansens present only their allegations and conclusions unsupported by any competent summary judgment evidence. *See Doe*, 153 F.3d at 215; *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 713. Before she took any action, Odin conducted an investigation, which included multiple medical evaluations that supported the abuse allegation. There is no evidence to suggest that Odin mislead any court or that her actions were not supported by her investigation. To the contrary, based on the information she had, including Erika's injury, the Hansens' explanation of how it happened, and their lengthy histories with both TDFPS and the criminal justice system, there was "a reasonable basis under the circumstances" for Odin's actions. *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (discussing the probable cause standard).

Under the totality of the circumstances, Odin had probable cause to believe Erika had been a victim of physical abuse or neglect. *Id*. Moreover, Odin acted objectively reasonable in her attempts to protect Erika Hansen from future abuse and neglect.[5] *See*

---

[5] The Hansens apparently argue the case against them was dismissed, which they contend supports the unreasonableness of Odin's actions. But, Court notes the Hansens were required to take several affirmative actions before the abuse case was dismissed. Though the outcome of a case is not dispositive in a qualified immunity analysis, the instant situation is not one in which a case was dismissed because of a lack of evidence or probable cause. *See generally Piazza v. Mayne*, 23 F. Supp. 2d 658, 662 (E.D. La. 1998) (noting that in a qualified immunity analysis, it is

*Mendenhall v. Riser*, 213 F.3d 226, 230-31 (5th Cir. 2000) (discussing probable cause and qualified immunity). Consequently, summary judgment in favor of Odin is granted with respect to the unlawful seizure cause of action.

B. Official Immunity

The Hansens contend Odin is liable for malicious prosecution and intentional infliction of emotional distress based on her investigation into the alleged child abuse of their daughter. In defense, Odin asserts she is entitled to official immunity on this state law claim because her actions were reasonable.

The affirmative defense of official immunity is similar to qualified immunity in that it protects a government employee from liability for harms resulting from the employee's performance of discretionary duties. *Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996). Under Texas law, government officials are immune from suits relating to the performance of (1) discretionary duties (2) if done in good faith and (3) so long as they are acting within the scope of their authority. *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 885 (5th Cir. 2004). "The good faith element 'is substantially' the same as the federal inquiry of qualified immunity; to determine 'good faith' we ask whether a reasonably prudent official could

---

irrelevant that criminal charges are later dropped or that a plaintiff is found innocent of the criminal charges for which he or she is now seeking civil damages).

10

have believed his or her conduct was consistent with the plaintiff's rights." *Id*. (quoting *Cantu*, 77 F.3d at 809.) Accordingly, whether Odin is entitled to immunity under the state law claims depends on whether her actions were reasonable. *Id*. As discussed above, Odin's actions, which were based on medical evaluations, a home visit, discussions with the Hansens, and research into the Hansens' background, were reasonable. The Hansens present nothing more than their unsubstantiated allegations as evidence to rebut Odin's immunity defense. *See Doe*, 153 F.3d at 211. Accordingly, the Court concludes Hansen is entitled to official immunity for both state law torts. Nevertheless, Court continues its analysis to determine whether the Hansens have raised any fact issues regarding the substantive merits of their state law causes of action.

C. Malicious Prosecution and Intentional Infliction of Emotional Distress

Assuming arguendo that Odin was not entitled to official immunity for the state law torts, the Hansens argue that Odin is liable for both malicious prosecution and intentional infliction of emotional distress. Odin counters that the Hansens have failed to establish the requisite elements of both claims.

The elements of malicious prosecution are: (1) "the institution or continuation of civil proceedings against the plaintiff, (2) by or at the insistence of defendant, (3) malice in the commencement of the proceedings, (4) lack of probable cause for the proceeding, (5) termination of the proceeding in plaintiff's favor, and (6) special damages."

*Providian Nat. Bank v. Ebarb*, No. 09-05-008-CV, 2005 WL 3338624, at * 1 (Tex. App.–Beaumont, Dec. 8, 2005, no pet. h.) (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

As the Court discussed above, there was probable cause to believe Erika Hansen had suffered from physical abuse and therefore probable cause to pursue emergency removal based on Odin's home visit, the medical evaluations, the seriousness of the infant's injury, and the Hansen's backgrounds. Accordingly, the Hansens have failed to produce competent summary judgment evidence to establish the fourth element of malicious prosecution. Thus, summary judgment as to the malicious prosecution claim is granted in favor of Odin.

The Hansens also allege they suffered emotional distress as a result of Odin's intentional actions in removing Erika from home. To sustain an intentional infliction of emotional distress claim, a plaintiff must establish: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme or outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999). In order for conduct to be deemed outrageous, it must be "so outrageous in character, as to go beyond all possible bounds of decency, and to be regarded as being atrocious, and utterly intolerable in a civilized community." *Id*. at 216 (quoting

*Twyman v. Twyman*, 855 S.W. 2d 619, 621 (Tex. 1993)). Additionally, "[t]here is no litmus test for outrageousness; whether conduct was outrageous and extreme must be analyzed on a case-by-case basis." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999).

Odin asserts she lacked the requisite intent because the decision to pursue emergency removal was made by her supervisor based upon Christine Hansen's refusal to allow Erika to remain in the care of a relative. This decision, she argues, was made prior to any alleged personal animosities or exchanges she had with Christine Hansen.[6] In their response, the Hansens do not address Odin's contentions, and they proffer no competent summary judgment evidence to support the elements of this cause of action.

As previously discussed, Odin's conduct was objectively reasonable. Indeed, she acted based on her investigation, which included research into the Hansens' background and medical evaluations that indicated possible physical abuse. It does not then logically follow that the Court could deem her conduct to be outrageous. In fact, her actions in pursuing the emergency removal of Erika were based on probable cause and the intent of protecting an infant from possible abuse. Consequently, Odin's actions do

---

[6] Odin denies that she made any improper comments during her conversations with Christine Hansen. In contrast, Christine Hansen admits to making comments such as she hoped Odin "died in her sleep for lying on me," which she alleges was part of a conversation in which both women "were disrespectful to each other."

13

not rise to the necessary level of being "beyond all possible bounds of decency." *See Brewerton*, 997 S.W.2d at 216. Thus, summary judgment is appropriate with respect to the intentional infliction of emotional distress claim. Accordingly, the Court hereby

ORDERS that Defendant's Motion for Summary Judgment (Instrument No. 49) is GRANTED. The Hansens' claims for unlawful seizure, malicious prosecution and intentional infliction of emotional distress are dismissed.

SIGNED at Houston, Texas, on this 9th day of March, 2006.

_David Hittner_

DAVID HITTNER

United States District Judge